UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANESSA SHEROD, AS ADMINISTRATOR OF THE ESTATE OF ELIZABETH WILES, AND IN HER OWN RIGHT, | Case No: |
| | 2:20-cv-185 |
| | **NOTICE OF REMOVAL** |
| Plaintiff, | Electronically Filed |
| v. | |
| COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC d/b/a BRIGHTON REHABILITATION AND WELLNESS CENTER, COMPREHENSIVE MANAGEMENT SERVICES – PROPERTY, LLC, CHMS GROUP, LLC, SAMUEL HARPER, EPHRAM LAHASKY, HEALTHCARE SERVICES GROUP, INC., HCSG LABOR SUPPLY, LLC, HCSG SUPPLY, INC., HCSG STAFF LEASING SOLUTIONS, LLC, QUALITY BUSINESS SOLUTIONS, INC., AND BRIAN EDWARD MEJIA, | |
| Defendants. | |

**NOTICE OF REMOVAL**

Please take notice that Defendant, Comprehensive Healthcare Management Services, LLC d/b/a Brighton Rehabilitation and Wellness Center ("Defendant Brighton"), hereby removes this case from the Court of Common Pleas of Allegheny County to the United State District Court for the Western District of Pennsylvania, based on an intervening change in law, pursuant to 28 U.S.C. § 1331, § 1441, §1446, the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (2005) (the "PREP Act"), the Declaration for Public Readiness and Emergency

1

Preparedness Act Coverage for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (March 17, 2020), including all amendments thereto and Advisory Opinions incorporated therein, and further states:

## I. STATEMENT OF CASE AND BASIS OF REMOVAL

1.      On July 1, 2020, Plaintiff initiated this action by filing a Complaint in the Court of Common Pleas of Allegheny County, G.D. No. 20-007319. A true and correct copy of Plaintiff's Complaint and Jury Demand is attached hereto as Exhibit A.

2.      Defendants, Comprehensive Management Services – Property, LLC, CHMS Group, LLC, HCSG Labor Supply, LLC, HCSG Supply, Inc., HCSG Staff Leasing Solutions, LLC, and Quality Business Solutions, Inc., were subsequently voluntarily dismissed from the case.

3.      On August 12, 2020, Defendant Brighton filed a Notice of Removal of this case to federal court, pursuant to the PREP Act, 42 U.S.C. 247d-6d and 42 U.S.C. 247d-6e, and the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). *See* 2:20-CV-01198 at ECF No 1. All other Defendants consented to this Removal. At the time of the August 12, 2020 filing, Defendants did not have the benefit of several Amendments to the PREP Act Declaration and Advisory Opinions that were subsequently issued by the Department of Health and Human Services ("HHS") regarding the PREP Act and the PREP Act Declaration.

4.      On October 16, 2020, this Court granted Plaintiff's Motion to Remand, finding that the federal officer removal statute was not applicable and federal jurisdiction did not exist because Plaintiff's allegations do not invoke the PREP Act.[1] *See* 2:20-CV-01198 at ECF No. 30, 31, 33.

---

[1] A federal or state statute may be invoked in a complaint, even if it is not mentioned by name. A plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *See Kilmer v. Cent. Ctys. Bank*, 623 F. Supp. 994, 998 (W.D. Pa. 1985) (internal citations omitted).

At the time of the remand, however, federal law governing the PREP Act's application in the context of the COVID-19 pandemic was only just beginning to develop.[2]

5.      Since that time, on January 8, 2021, HHS issued new controlling authority, Advisory Opinion 21-01 ("AO 21-01"), which confirms **unequivocally** that: (1) the PREP Act is a "Complete Preemption" Statute which confers federal question removal jurisdiction under 28 U.S.C. § 1441(a);  (2) the PREP Act is indeed invoked by allegations like those in the instant Complaint, including alleged failure to act or inaction; and (3) federal jurisdiction is separately conferred in such cases under the doctrine articulated by the United States Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), because "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that ***the case belongs in federal court***." (emphasis added). *See* HHS Advisory Opinion 21-01, dated January 8, 2021, attached hereto as Exhibit B.

6.      AO 21-01 is binding on this Court, as the HHS Secretary has now incorporated all HHS Advisory Opinions pertaining to COVID-19 into the PREP Act's implementing Declaration itself and proclaimed that the Declaration "must" be construed in accordance with them. *See* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190 (Dec. 9, 2020) (the "Fourth Amendment"), attached hereto as Exhibit C. As such, the HHS Advisory Opinions are no longer "advisory." Rather, they now have the same "controlling weight" as the Declaration and the PREP Act itself. Where Congress has expressly delegated interpretative

---

[2] On November 6, 2020, Defendant Brighton filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit, asking the Court to review this remand order. This Appeal is now pending.

authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

7.    Furthermore, to avoid any doubt, the Secretary subsequently amended the Declaration for a fifth time on January 28, 2021, confirming again in the Declaration itself that the PREP Act is a complete preemption statute.[3]

8.    Also, Congress reinforces the Secretary's ultimate authority over these matters concerning the PREP Act in the statute itself, warning that "[n]o court . . . shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under [the PREP Act.]" 42 U.S.C. § 247d-6d(b)(1), (4) & (7).

9.    Therefore, based on this new, intervening, and controlling authority from HHS, Defendant Brighton now removes this case to this Court. This Notice of Removal is timely because it is filed within thirty (30) days from the issuance of AO 21-01 on January 8, 2021. *See* 28 U.S.C. § 1446(b)(3)("[i]f the case stated by initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, ***or other paper*** from which it may first be ascertained that the case is one which is or has become removable.") (emphasis added).

10.    A relevant change in the law justifying removal has occurred here because at the time of the original remand of this case, the law was only just beginning to develop as to how the PREP Act is triggered and whether the PREP Act was a complete preemption statute. HHS subsequently issued authority that, pursuant to the Declaration, courts must now use to resolve

---

[3] *See* Fifth Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19, available at https://www.phe.gov/Preparedness/legal/prepact/Pages/COVID-Amendment5.aspx.

these questions, including AO 21-01, which confirms for the first time that the PREP Act is a complete preemption statute.

11.      It is notable that AO 21-01 follows other HHS authority issued after this case was remanded that provides additional helpful guidance to the courts in construing the PREP Act. Significantly, the Fourth Amendment made "explicit that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections." 85 Fed. Reg. 79190 (emphasis added).

12.      And even after AO 21-01 was issued, the Secretary again amended the Declaration with the Fifth Amendment on January 28, 2021, stating "[t]he *plain language of the PREP Act makes clear that there is complete preemption of state law*."[4] Additionally, the Fifth Amendment reaffirms the Secretary's prior directive that HHS's Advisory Opinions are expressly incorporated into the Declaration, thereby requiring that they be afforded "controlling" deference under *Chevron.*

13.      The United States Department of Justice also recently filed a Statement of Interest ("SOI") in *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC.*, 3:20-CV-00683 (M.D. Tenn. Jan. 19, 2021), at Docket No. 35, which constitutes the official position of the United States' interest in the enforcement of the PREP Act providing, *inter alia*, that:

a)      The PREP Act is crucial to the "whole-of-nation response" to public health emergencies. *Id.* at 1–2. This response depends on the cooperation among private-sector partners and state and local officials across the nation and that "sweeping" immunity was granted to encourage such cooperation. *Id.* at 2.

b)      Federal jurisdiction is proper since the PREP Act's exclusive federal cause of action creates federal question jurisdiction. *Id.* at 3.

c)      PREP Act immunity for all Federal and state law claims and a sole exception to immunity claims process makes the PREP Act a complete preemption statute. *Id.* at 7–8.

---

[4] *See* Fifth Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID–19, available at https://www.phe.gov/Preparedness/legal/prepact/Pages/COVID-Amendment5.aspx.

d)     It is the nature of a complaint that determines complete preemption, not the stated claims. *Id.* at 6.

e)     *Maglioli* and its progeny's interpretations of the PREP Act's complete preemptive effect are incorrect and that their holdings should be limited to their facts. *Id.* at 10–12.

14.     The DOJ's SOI commenting on the scope of a federal court's jurisdiction is of "considerable interest" to the courts. *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) (holding that the State Department's Statement *amicus curiae* brief on the subject of exercise of federal jurisdiction and statutory construction is of "considerable interest").

15.     Additionally, the United States District Court for the Central District of California recently issued an order tentatively denying Plaintiff's remand motion and granting Defendants' dismissal motion, ruling that AO 21-01 affirms the PREP Act is indeed a complete preemption statute and it clarifies the scope of the Act relative to the ongoing pandemic. *See* Tentative Order in *Garcia et al. v. Welltower OpCo Group, LLC,* et al., 8:20-CV-02250 (CDCA), attached here to Exhibit D, discussed in further detail *infra*.

16.     All of these authorities are significant and must be read together in interpreting the PREP Act. However, AO 21-01 is the intervening authority for this removal petition, as it provided the first official confirmation from the Secretary that the PREP Act is a complete preemption statute, and it was subsequently confirmed in the Fifth Amendment to the Declaration.

17.     Therefore, based on the aforementioned new, intervening, and controlling authority, Defendant Brighton hereby removes this case to the United States District Court for the Western District of Pennsylvania.

18.     In accordance with 28 U.S.C. §1446(a), a true and correct copy of all of the process and pleadings filed in the action to date, along with a copy of the Civil Docket Sheet, are collectively attached to this notice as Exhibit E (in addition to the Complaint, which is Exhibit A).

19.     As required by 28 U.S.C. §1446(d), concurrent with this filing, Defendant Brighton is also filing a true and correct copy of this Notice of Removal with the Clerk of the Court of Common Pleas of Allegheny County, Pennsylvania. A true and correct copy of the Notice of Filing the Notice of Removal is attached hereto as Exhibit F.

20.     This Notice of Removal is being filed in the United States District for the Western District of Pennsylvania, the District Court of the United States within which the state court action is pending, as required by 28 U.S.C. §§1441(a) and 1446(a).

21.     Removing counsel also represents Defendants Sam Halper (incorrectly identified as Samuel Harper), and Ephram Lahasky. These Defendants consent to the removal of this case to this Court. A true and correct copy of the Consent to Removal on behalf of these Defendants, which will also be filed concurrently with this Notice of Removal, is attached hereto as Exhibit G.

22.     Additionally, Defendants Healthcare Services Group, Inc. and Brian Edward Mejia consent to this Removal.

23.     Accordingly, Defendant Brighton has satisfied all procedural requirements governing removal pursuant to 28 U.S.C. §§ 1441 and 1446, the Federal Rules of Civil Procedure, and the Local Rules of this Court.

24.     By filing this Notice of Removal, Defendant Brighton does not waive any defenses that may be available to it.

## II. SUCCESSIVE REMOVAL IS PROPER WHEN A DEVELOPMENT IN THE LAW CREATES NEW AUTHORITY FOR REMOVAL

25.     A party may file a notice of removal "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or ***other paper from which it may first be ascertained that the case is one which is or has become removable.***" 28 U.S.C. § 1446(b)(3) (emphasis added).

26.     AO 21-01 qualifies as "other paper" under 1446(b) and provides Defendant Brighton with the opportunity to file the present removal because AO 20-21, for first time, establishes with clear and unambiguous language that federal jurisdiction should be conferred in the present matter.

27.     Although the Third Circuit has not defined "other paper," district courts in this Circuit have interpreted this phrase widely. *Nicole B. v. Sch. Dist. of Phila*., 2016 U.S. Dist. LEXIS 79650, at \*6-7 (E.D. Pa. June 14, 2016) (citing *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 477 (E.D. Pa. 2013); *see also Connolly v. Aetna U.S. Healthcare, Inc.*, 286 F.Supp.2d 391, 399 (D.N.J. 2003); *Cabibbo v. Einstein/Noah Bagel Partners, L.P.*, 181 F.Supp.2d 428, 432–33 (E.D. Pa. 2002).

28.     Moreover, successive removals are permitted in other federal jurisdictions, which provide persuasive authority to this Honorable Court, upon a "relevant change of circumstance" – that is, when subsequent legal authority, new legislation, or subsequent pleadings or events reveal a change justifying reconsideration of a successive removal and/or new and different grounds for removal. *See Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991) (persuasive); *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d. 1185 (9th Cir. 2015) (persuasive); *Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 780 (9th Cir. 2018) (persuasive); *Rea v. Michaels Stores, Inc.,* 742 F.3d 1234, 1238 (9th Cir. 2014) (persuasive).

29.     Furthermore, courts have even looked to "other paper" to establish federal question jurisdiction in clarifying that a plaintiff's state law claim is one that would be preempted by federal law. For example, in *Peters v. Lincoln Elec. Co*., 285 F.3d 456, 468-69 (6th Cir. 2002), the Sixth Circuit permitted the examination of deposition testimony to ascertain that the plaintiff's state law claim was related to his retirement plan and was, therefore, preempted by ERISA. The Sixth Circuit

discussed that complete preemption is an exception to the well-pleaded complaint rule and concluded that federal question jurisdiction was proper. *See id*. at 468 n.11. Notably, in *Peters*, the deposition testimony was used, not to establish a new federal claim, but to clarify the nature of the existing claim, namely, that it is one that would be preempted by federal law.

30.     Notably, counsel in similar COVID litigation in other jurisdictions have recently filed successive removals based on the recently published AO 21-01 and also on the Fourth Amendment to the PREP Act Declaration. *See Martin, et al. v. Serrano Post Acute, LLC, et al.*, 2:21-CV-00187 (CDCA) (removal based on Fourth Amendment ) and *Hopman v. Sunrise Villa Culver City, et al.*, 2:21-CV-01054 (CDCA) (based on AO 21-01).

31.     Thus, Defendant's removal is timely under 28 U.S.C. § 1446(b) as it is being filed within 30 days of publication of AO 21-01 on January 8, 2021.

### III. JURSIDCTION EXISTS UNDER 28 U.S.C. § 1331 (FEDERAL QUESTION)

#### A. Plaintiff's Allegations in the Complaint

32.     Plaintiff summarily alleges that Ms. Wiles, an employee of Defendant Healthcare Services Group, Inc., was exposed to and infected with COVID-19 while working at Brighton Rehabilitation and Wellness Center. *See* Exhibit A, at ¶¶ 3, 99.

33.     Plaintiff's claims against Defendant Brighton include negligence, medical negligence, fraudulent misrepresentation, intentional misrepresentation, wrongful death, and survival arising from the Brighton Defendant's response to COVID-19 pandemic and its administration and use of scarcely available personal protective equipment ("PPE"), testing equipment, safety equipment and other countermeasures in an attempt to prevent or mitigate the spread of COVID-19.

34.     Plaintiff alleges that Defendants failed to protect Plaintiff's Decedent, Elizabeth Wiles, from the COVID-19 virus during and throughout the pandemic by negligently providing, allocating, and using scarcely available safety and testing equipment and supplies that were designated countermeasures to combat the COVID-19 outbreak, including, but not limited to, items identified as PPE, such as gloves and face masks. *See, e.g.,* Exhibit A, at ¶¶ 77, 78, 82, 87, 88, 90 118, 122(c), 122(f), 122(t), 122(mm), 122(uu), 122(vv), 122(ww), 122(ddd).

35.     Plaintiff further alleges that Ms. Wiles's death was caused by Defendants' acts or omissions involving these various countermeasures. Specifically, Plaintiff's Complaint alleges, *inter alia*: "As a direct result of the carelessness, negligence, recklessness, fraudulent and intentional misrepresentation and/or other liability producing conduct of Defendants, Plaintiff's decedent, Elizabeth Wiles suffered illness and injuries ***that led to her death.***" *See* Exhibit A, ¶ 104; "The negligence, carelessness and recklessness of Defendants, their agents, servants, and/or employees, ***which were the cause of Elizabeth Wiles' death***…" *see id.* at ¶ 122; "***The death and injuries sustained by Plaintiff's decedent was caused by the negligence, carelessness, recklessness, outrageous conduct and intentional misrepresentations of Defendants*** acting by and through their agents, servants, workers and/or employees…" *see id.* at ¶ 159.

### B. Plaintiff's Claims are Covered by the PREP Act

### i. The PREP Act

36.     The PREP Act, which is a component of the Public Health Services Act ("PHSA"), 42 U.S.C. § 201, et seq., grants healthcare providers and other covered persons immunity from claims for injuries related to the use of approved countermeasures to combat a national public health emergency, such as the COVID-19 pandemic. Congress's goal was to enable healthcare providers, including

nursing facilities, to focus on using every available means to combat a pandemic and save lives without being chilled in their efforts by the threat of lawsuits. 42 U.S.C. § 247d-6d.

37.     The PREP Act is triggered when the HHS Secretary issues a declaration defining the scope and breadth of PREP Act protections relevant to a particular public health emergency. *See* 42 U.S.C. § 247d. The PREP Act provides that when a "disease or other health condition or other threat to health constitutes a public health emergency," the Secretary of Health and Human Services may issue a declaration "recommending[] . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures" against the disease. *Id.* When such a declaration issues, "covered persons" who administer or use "covered countermeasures" become "immune from suit and liability under Federal and State law with respect to *all claims for loss caused by, arising out of, relating to, or resulting from* the administration to or the use by an individual of a covered countermeasure" as defined by the Secretary of HHS. 42 U.S.C. § 247d-6d(a)(1) (emphasis added).

38.     Significantly, the PREP Act provides for complete preemption in that it explicitly states, "[w]ith respect to [the PREP Act's] 'covered countermeasure[s],' Congress provided that subject to certain exceptions, 'a covered person *shall* be immune from suit and liability under Federal and State law with respect to *all* claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure,…" §247d-6d(a)(1). It also bolsters that complete preemption language by further stating that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or is in conflict with, any requirement applicable under this section" and relates to, among other things, use or administration of the covered countermeasure. 42 U.S.C. § 247d-6d(b)(8)(A)-(B).

39.     In addition, Congress provides two exclusive federal remedies in the PREP Act for individuals with claims for loss arising out of the use of covered countermeasures. First, the Act creates a "Covered Countermeasure Process Fund" for purposes of "providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d-6e(a). Claimants can receive compensation from this fund by applying for benefits through the Countermeasures Injury Compensation Program. *See* 42 C.F.R. §§ 110.1-110.100. Second, an injured person may bring "an exclusive Federal cause of action" under the PREP Act "against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). The PREP Act sets forth specific procedures that govern lawsuits asserting this cause of action. *Id.* § 247d-6d(e).

40.     The PREP Act was triggered for COVID-19 when the HHS Secretary issued a declaration on March 17, 2020, announcing that, as of February 4, 2020, "[l]iability immunity as prescribed in the PREP Act. . . is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency" related to COVID-19. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201-02 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21,012 (Apr. 15, 2020) (the "Declaration").

41.     In that Declaration, the term "administration" is defined to extend beyond the physical distribution of COVID-19 countermeasures to the "management and operation of countermeasure programs, or management and operation of locations for [the] purpose of distributing and dispensing countermeasures." *See* 85 Fed. Reg. 15202. This definition is consistent with the plain language of the

PREP Act, which addresses both "acts and omissions" – the latter of which means failure to act. 42

U.S.C. § 247d-6d(c)(4).

42.     The Declaration also broadly defines "covered countermeasure" as:

> Covered Countermeasures are any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product. Covered Countermeasures must be "qualified pandemic or epidemic products," or "security countermeasures," or drugs, biological products, or devices authorized for investigational or emergency use, as those terms are defined in the PREP Act, the FD&C Act, and the Public Health Service Act.

85 Fed. Reg. 15198.

43.     The Declaration was subsequently amended to add respiratory protective devices to the list of covered countermeasures. *See* 85 Fed. Reg. 21012. On June 8, 2020, the Declaration was amended again to reflect HHS's initial intent to "identify the full range of qualified countermeasures" as permitted under the PREP Act. 85 Fed. Reg. 35100.

44.     On October 23, 2020, after remand was initially ordered in this case, HHS issued "Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and Secretary's Declaration Under the Act" clarifying that "administration" under the PREP Act is much broader than the mere physical provision of a countermeasure to a recipient and encompasses activities related to the "management and operation" of COVID-19 countermeasure programs and those facilities that provide countermeasures to recipients. *See* Exhibit H.

45.     This Advisory Opinion flatly rejected as "wrong" a prior New York trial court ruling in *Casabianca v. Mt. Sinai Medical Center*, 2014 WL 10413521 (New York Co. 12/12/14), that the PREP Act requires the "direct physical" administration of a COVID-19 countermeasure

and that the Act is not applicable to claims involving an omission or failure to act. In doing so, the Advisory Opinion rejects the reasoning employed by this Honorable Court in the previous remand of this action, and stresses the breadth of the PREP Act's application to "encompass[] 'activities related to management and operation of programs and locations for providing countermeasures to recipients,' such as decisions relate to countermeasure activities. *See id*.

46.     Thereafter, in the Fourth Amended Declaration: "The Secretary amends Section IX to make explicit that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections." Exhibit C, pp. 4 & 13. This Amendment to the Secretary's PREP Act Declaration "make(s) explicit" that the failure to distribute a countermeasure can nonetheless lead to immunity under the PREP Act.

47.     And recently, AO 21-01 rejects the notion that immunity under the PREP Act requires actual "use" of a covered countermeasure. Specifically, AO 21-01 provides that "this 'black and white' view clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure." *See* Exhibit B, p. 3.

48.     AO 21-01 further provides that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declarations liability protections. There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure." *See id.*

49.     Additionally, AO 21-01 explains that "program planners" fall within the set of "covered persons" under the PREP Act and that "decision-making that leads to the non-use of

covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by PREP Act." *See id*. at p. 4.

### ii. Defendant is a "Covered Person" under the PREP Act

50.     A "covered person" includes a person or entity that "is a qualified person" or a "program planner." 42 U.S.C. § 247d–6d(i)(2)(B). A "qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." 42 U.S.C. § 247d–6d(i)(2)(B)(iv). A "program planner" is defined as "a State or local government, including . . . a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b)." 42 U.S.C. § 247d–6d(i)(6). Further, the PREP Act defines a "person" as "an individual, partnership, corporation, association, entity, or public or private corporation, including a federal, state or local government agency or department." 42 U.S.C. § 247d–6d(i)(5).

51.     The meaning of "program planner" and "qualified person" has been clarified as follows:

> …State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered

countermeasure in accordance with [the Secretary's declaration].

42 U.S.C. § 247d-6d[i][6].

52.     Under the Secretary's declaration, "[A] private sector employer or community group or other 'person' can be a program planner when it carries out the described activities." 85 Fed. Reg. at 15202.

53.     Furthermore, on August 14, 2020, the Office of General Counsel confirmed that senior living communities are "covered persons" subject to immunity under the PREP Act as "program planners" and "qualified persons." *See* Exhibit I.

54.     The October 23, 2020 Advisory Opinion also verified that that the term "program planner" is broadly defined. *See* Exhibit H. The opinion also explained that PREP Act coverage will apply to a covered person using a covered countermeasure in accordance with any public health guidance from an "Authority Having Jurisdiction."

55.     AO 21-01 more broadly outlined that a "program planner" under the Act is "someone who is involved in providing or allocating covered countermeasures," and that "program planning inherently involves the allocation of resources." *See* Exhibit B, p. 4. The Advisory Opinion thereby concluded that "decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by [the] PREP Act." *Id.*

56.     As a senior assisted-living facility and a program planner, Brighton is, and has been, using PPE such as face masks and gloves, and it has engaged in the "management and operation of [a] location[] for [the] purpose of distributing and dispensing countermeasures" to senior citizens in order to fight the spread and impact of COVID-19 and to save lives. *See* HHS Response Letter, at 1; *compare* Exhibit A, ¶ 18 (Brighton's operation of a nursing home), ¶¶ 77, 78, 82, 87,

88, 90 118, 122 (failure to provide "sufficient" PPE, failure to timely institute adequate preventative measures, including infection control measures) *with* 85 Fed. Reg. 15198, at 15201 (defining "administration") and ¶ 102 (allegations of Department of Health citations relating to allegedly deficient infection control practices and alleged misuse of PPE, including gloves and face masks).

57.    Thus, Brighton qualifies as a "covered person" under the PREP Act.

### iii. Plaintiff alleges claims for loss relating to Defendant's use and administration of covered countermeasures

58.    Plaintiff's claims arise from and relate to Defendant's conscious decisions to allocate, prioritize, and use scarcely available covered countermeasures, including COVID-19 testing and PPE, as well as Defendant's purported misuse of those countermeasures. Also, Plaintiff alleges that this conduct by Defendant resulted in Plaintiff's injuries, thereby triggering the PREP Act. *See, e.g.,* Exhibit A.

59.    A review of Plaintiff's Complaint reveals such allegations relating to Covered Countermeasures, including, but not limited to: not providing "sufficient PPE" and "appropriate PPE" (Exhibit A, ¶ 87, 90, 122(t), (ddd)), ¶ 122(e)) as well as not providing training on proper use of PPE and other infection control measures (*Id.,* ¶ 122(v), (w), (x)), etc.

60.    The acts and omissions alleged by Plaintiff appear almost verbatim in the January 8, 2021 Advisory Opinion:

> At one extreme, plaintiff may have pleaded that the facility failed *in toto* to provide any of its staff or patients with PPE... Other plaintiffs allege that the quantity of PPE was inadequate, that staff were not timely provided PPE, or that staff were not adequately trained to use PPE... **decision-making that leads to the non-use of covered countermeasures by certain individuals is in the grist of program planning, and is expressly covered by PREP Act.**

*See* Exhibit B, at pp. 2-4 (emphasis added).

17

61.    AO 21-01 interpreting the Fourth Amended Declaration removes any doubt that decisions as to allocation and use of countermeasures, even those that result in their non-use, can implicate the PREP Act and trigger its immunity protections.

62.    Therefore, based on the face of the Complaint, the totality of the allegations made therein, and the logical impact of its most central allegations, the PREP Act is implicated here by Plaintiff's claims against Defendant as a "covered person" engaged in "recommended activities" under the Act. 42 U.S.C.A. §247d–6d(a)(1). Plaintiff's allegations fall directly within the ambit of the PREP Act.

**C. There is Complete Preemption under the PREP Act.**

63.    AO 21-01 interpreting the Fourth Declaration to the PREP Act states unequivocally that the PREP Act is a "**Complete Preemption Statute**." *See* Exhibit B, p. 2. This Advisory Opinion flatly rejects any decisions to the contrary. A plain reading of the Act, the Fourth Declaration to the PREP Act, and AO 21-01 make clear that complete federal preemption is present in this case, and the state court has no jurisdiction to hear or consider the claims arising under this statute.

64.    Additionally, the United States District Court for the Central District of California recently issued an order tentatively denying Plaintiff's remand motion and granting defendants' dismissal motion based on the PREP Act, stating that AO 21-01 affirms that the Act is indeed a complete preemption statute and clarifies the scope of the Act relative to the ongoing pandemic. *See* Temporary Order in *Garcia et al. v. Welltower OpCo Group, LLC,* et al., 8:20-CV-02250 (CDCA), attached hereto as Exhibit D. The court concluded that Plaintiff's accusations concerning Defendants' actions undoubtedly fall within the scope of the PREP Act and meet the specifications of the January 8 Advisory Opinion.

65.     In reaching this decision, the court initially determined that Defendants are covered persons under the Act because they are program planners in that they supervised or administered a program with respect to administration and use of countermeasures or provided a facility to administer or use countermeasures. The court stated that, contrary to Plaintiff's assertions otherwise, the PREP Act extends beyond vaccine manufacturers. The court found that Defendants supervised and administered infection control programs as required by California law, and that they are indeed covered persons as program planners under the PREP Act. The court continued on to conclude that Plaintiff's injuries also arise out of and relate to the administration to and use by an individual of a covered countermeasure. The court stated that the Amended Complaint made allegations of use and misuse of PPE as well as the infection control measures that directly relate to the covered countermeasures within the meaning of the Act, pointing again to the January 8, 2021 Advisory Opinion for support. Finally, the Court stated that "because the [Office of General Counsel] stated the PREP Act is a complete preemption statute...an adequate bases for federal question jurisdiction exists." *See* Exhibit D, pp. 13-14.

66.     Accordingly, during the designated period of time of the Secretary's Declaration, a claimant may not pursue ordinary state law claims under statutory or common law to achieve a different result or more monetary damages than provided by the PREP Act. Here, because the PREP Act is invoked by virtue of Defendant being a Covered Person who engaged in the use and non-use Covered Countermeasures, complete preemption applies. Accordingly, jurisdiction must lie in this Court.

### D. Federal Question Jurisdiction Exists Pursuant the *Grable* Doctrine

67.     Federal question jurisdiction over state law claims also exists when there is a substantial, embedded question of federal law. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

68.     The Fourth Amendment to the PREP Act Declaration makes the following statement regarding federal jurisdiction over PREP Act-related claims:

> "The Secretary makes explicit in Section XI that there are substantial federal legal and policy issues, and substantial federal legal and policy interests in having a unified whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities. The world is facing an unprecedented global pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mfg.,* 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act.

*See* Exhibit B, at pp. 13, 14, 26.

69.     AO 21-01 subsequently confirmed that the PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable* doctrine. See AO 21-01.

70.     AO 21-01 confirms that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." *See* Exhibit B, at p. 5.  In addition, AO 21-01 highlights the Secretary's conclusion in the Declaration that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [the Grable doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." *See id.* (quoting 85 Fed. Reg. at 79, 197(col. c)).

71.     The Advisory Opinion's interpretation of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state-law

claims that implicate federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

72.     In *Grable*, the Supreme Court set forth a two-step process for determining whether a state law claim "arises under" federal law. First, the state law claim must necessarily raise a stated federal issue, actually disputed and substantial. Second, federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." *Id.* at 314.

73.     Here, the first prong is met because Plaintiff's Complaint alleges Defendant's negligent use and administration of covered countermeasures in preventing the spread of COVID-19. These allegations invoke a substantial federal question as to whether the broad immunities afforded under the PREP Act apply to the conduct of Defendant, and a federal court has a substantial interest in determining the application of the Act. The second prong is also met because, as confirmed by AO 21-01and the Declaration, the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiff, *i.e.*, issues concerning Defendant's conscious decisions to use or not use covered countermeasures, including COVID-19 testing and PPE. A substantial and disputed federal issue regarding the application of the PREP Act to Plaintiff's claims therefore necessarily exists, and must be resolved by this Court to ensure the uniform and appropriate application of the PREP Act. Therefore, Plaintiff's claims arise under federal law and were properly removed to this Court.

74.     The *Grable* Court further held that federal question jurisdiction applies where the dispute implicates "significant federal issues." 545 U.S. at 312. The Court stated that this doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

75.     In expressing the need for uniform interpretation of the PREP Act, and by twice noting the "substantial federal issues and interests" involved, the Secretary is leaving no doubt that cases implicating the PREP Act must be adjudicated by federal courts.

76.     The Supreme Court has generally required courts to defer to administrative agency interpretations of statutes where it is up to the federal agency to administer a federally created program. This is typically referred to as either *Chevron* or *Skidmore* deference, following the Supreme Court cases that established these rules. *See Chevron, Inc. v. NDRC, Inc.,* 467 U.S. 837, 843 (1984); *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944). As the Court wrote in *Chevron:* "We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." 467 U.S. at 844.

77.     Accordingly, the AO 21-01 and the Fourth Amendment, which warrant *Chevron* deference confirm the underlying basis for invoking *Grable* with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure. Exhibit C, p. 5.

WHEREFORE, this action is hereby removed to this Court from the Court of Common Pleas of Allegheny County, Pennsylvania. Plaintiff is hereby notified to proceed no further in state court.

Dated: February 8, 2021                    GORDON & REES LLP

                                           By: /s/ Andrew G. Kimball, Esq.

                                           Andrew G. Kimball
                                           PA I.D. No. 46425
                                           Email: akimball@grsm.com

                                           Erica Kelly Curren
                                           PA I.D. No. 318819
                                           Email: ecurren@grsm.com

                                           **GORDON & REES LLP**
                                           707 Grant Street
                                           Suite 3800
                                           Pittsburgh, PA 15219
                                           Phone: (412) 577-7400

                                           *Counsel for Defendant,*
                                           *Comprehensive Healthcare Management*
                                           *Services, LLC d/b/a Brighton*
                                           *Rehabilitation and Wellness Center*

## CERTIFICATE OF SERVICE

I, Andrew G. Kimball, hereby certify that on February 8, 2021, a copy of the foregoing

Notice of Removal was served upon the following counsel of record:

David L. Kwass, Esq.
Elizabeth A. Bailey, Esq.
**SALTZ MONGELUZZI
& BENDESKY P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(*Counsel for Plaintiff*)

John M. Campbell, Esq.
Jennifer M. Swistak, Esq.
**CIPRIANI & WERNER P.C.**
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
(*Counsel for Defendants, Healthcare
Services Group, Inc. and Brian Edward
Mejia*)

GORDON & REES LLP

By: /s/ Andrew G. Kimball, Esq.
      Andrew G. Kimball
      PA I.D. No. 46425

707 Grant Street, Suite 3800
Pittsburgh, PA 15219
Phone: (412) 577-7400
Email: akimball@grsm.com

*Counsel for Removing Defendant,
Comprehensive Healthcare Management
Services, LLC d/b/a Brighton Rehabilitation
and Wellness Center
- and -
Counsel for Consenting Defendants, Sam
Halper (incorrectly identified as Samuel
Harper), and Ephram Lahasky*